In the

# United States Court of Appeals
### For the Seventh Circuit

_____

No. 25-1487

JOSHUA WRIGHT,
as next of kin of J.W., a minor, now deceased,

*Plaintiff-Appellant,*

*v.*

ANGELA SHUMATE, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:23-cv-04734 — **Sara L. Ellis**, *Judge.*

_____

ARGUED APRIL 21, 2026 — DECIDED JULY 9, 2026

_____

Before BRENNAN, *Chief Judge,* and JACKSON-AKIWUMI and
MALDONADO, *Circuit Judges.*

BRENNAN, *Chief Judge.* Joshua Wright is the father of J.W.,
a minor who died while in his mother's custody. Wright sued
employees of the Illinois Department of Children and Family
Services under 42 U.S.C. § 1983, arguing that they are respon-
sible for J.W.'s wrongful death because they failed to properly

investigate earlier allegations of abuse by the boy's mother and her boyfriend.

As a general rule, a state actor cannot be held liable under the Fourteenth Amendment for failing to protect an individual from private acts of violence. Here, Wright invokes the state-created danger exception to that rule. This is indeed a distressing case. But because Wright's allegations do not establish that any act by the Department's employees caused J.W.'s death or shocked the conscience, his claim must be dismissed.

## I

In this appeal, we review the district court's grant of a motion to dismiss, so all well-pleaded factual allegations are accepted as true and viewed in the light most favorable to the plaintiff. *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022). But any allegations couched as legal conclusions are disregarded. *Guerrero v. Howard Bank*, 74 F.4th 816, 819 (7th Cir. 2023).

## A

"The facts of this case are undeniably tragic." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 191 (1989). J.W. was the son of Joshua Wright and Regina Pipes. Pipes had custody over J.W. and his siblings. They all lived in Pipes's home in Round Lake Beach, Illinois, with her boyfriend Tracy Thomas.

In September 2021, J.W.'s grandparents called the Illinois Department of Children and Family Services child abuse hotline. They reported that Thomas was abusing Pipes in front of J.W. and his siblings, that "physical abuse was occurring at the home," and that J.W. and the other children were afraid of

Thomas. In response, the Department assigned Child Protection Specialists Angela Shumate and Tania Miller to investigate the call.

Later that day, Miller went to the home. She began to interview the children, but Pipes "quickly" stopped her because Pipes was uncomfortable with the children being questioned. Miller then interviewed Pipes and Thomas, who both admitted to past domestic violence.

After the interviews, Miller completed the Child Endangerment Risk Assessment Protocol, marking the children as "safe" on the form. She did not evaluate the safety of Thomas's presence in the home by completing a Paramour Assessment Checklist. This checklist was created by the Department in response to the increased risk of abuse in homes with paramours. Miller also spoke with her supervisor, Lisa Vargas, who agreed with assessing the children as "safe."

Two months later, Shumate followed up and interviewed J.W. and his siblings at school about the allegations of domestic violence and physical abuse. The children told Shumate they were "whipped on the bottom" as punishment, witnessed violence at home, and had called the police in fear for their safety. Despite this information, Shumate submitted a report indicating the children "felt safe at home." Like Miller, she did not complete a Paramour Assessment Checklist.

After conferring with her supervisors, Shumate issued a final investigative report. Though Department employees had learned of calls to the police for domestic violence, the report was approved and the investigation closed without further action. Shumate also informed Pipes and Thomas that

the Department concluded the allegations of abuse against them were "indicated."

Almost three months later, J.W. was brought unresponsive to the hospital with bruising on both legs, right buttock, collarbone, and bilateral hips. A CAT scan revealed multiple brain bleeds. J.W. underwent emergency surgery, but he died four days later. The autopsy determined that his cause of death was multiple injuries caused by an assault. Police arrested Thomas, who was subsequently charged with aggravated battery and first-degree murder of J.W.

**B**

Wright, on behalf of his deceased son, brought a wrongful death action in Illinois state court, asserting state-law claims of assault and battery against Pipes and Thomas. He also alleged a state-law negligence and a federal substantive due process claim under § 1983 against the Department and certain individual employees.

After removing the case to federal court, the defendants moved to dismiss, arguing that Wright failed to state a Fourteenth Amendment claim under § 1983 because state employees do not violate a victim's substantive due process rights when they fail to prevent a private actor from committing violence. The defendants also argued that the claim should be dismissed because they were entitled to qualified immunity.

The district court concluded that Wright did not sufficiently plead whether the state-created danger exception applied. It granted the defendants' motion and dismissed that claim without prejudice to allow Wright to amend his complaint in support of the exception. The court declined supple-

mental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c)(3).

Wright then filed a second amended complaint, eliminating the claim against the Department. The complaint alleged several actions that led to J.W.'s death including the home visit and school interview, Miller and Shumate's reporting errors, the negligent approval of the reports, and a failure to check in on J.W. in the weeks before his death. The remaining defendants moved to dismiss for failure to state a claim and invoked qualified immunity. The court granted this motion, dismissing Wright's federal claim with prejudice and his state-law claims without prejudice.

After the second dismissal, Wright moved to vacate or amend the court's order under Federal Rule of Civil Procedure 59(e). He first asked the court to vacate the judgment because it incorrectly dismissed his § 1983 claim. Alternatively, he asked the court to amend the judgment to dismiss his claim without prejudice so he could file a third amended complaint. The court denied this motion. Wright timely appeals.

## II

We review de novo a grant of a Rule 12(b)(6) motion to dismiss. *Chi. Tchrs. Union, Loc. 1 v. Educators for Excellence, Inc.*, 159 F.4th 524, 528 (7th Cir. 2025). To survive the motion, a complaint must state a facially plausible claim for relief. *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024) (citation omitted). This requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## A

The Due Process Clause of the Fourteenth Amendment does not impose an affirmative duty on the government "to protect an individual against private violence." *DeShaney*, 489 U.S. at 197. In *DeShaney*, social workers and local officials were alleged to have improperly responded to reports of child abuse. *Id.* at 192–93. But the Court concluded the officials did not violate the victim's due process rights because "the State had no constitutional duty to protect [the child] against his father's violence." *Id.* at 202. Any limited affirmative duties of care are typically cabined to situations in which the State has affirmatively restrained an individual's freedom, such as through incarceration or institutionalization. *Id.* at 199–200.

This court, like other circuits, has recognized a "narrow" exception to *DeShaney* that applies when a state actor's affirmative conduct creates or increases a danger to the plaintiff—also known as the state-created danger exception. *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 988 (7th Cir. 2021). But we have consistently recognized that *DeShaney* sets a high bar for public officials to be held liable for private injuries. *See, e.g.*, *Weiland v. Loomis*, 938 F.3d 917, 919 (7th Cir. 2019); *Est. of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019); *Doe v. Village of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015). And this court is particularly hesitant to apply the exception in a way that "would have justified liability in *DeShaney*." *Weiland*, 938 F.3d at 921.

To prevail against a motion to dismiss on a claim brought under the state-created danger exception, the plaintiff must allege that (1) the state's affirmative acts created or increased a danger to the individual, (2) the subsequent failure to protect caused the injury, and (3) the state's behavior shocked the

conscience. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827–28 (7th Cir. 2009).

The first element of the exception requires evidence that the defendant created or increased the danger to an individual. *See Doe*, 782 F.3d at 917; *Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.*, 548 F.3d 595, 599 (7th Cir. 2008). It is not enough for a public official's act to merely invite danger. *Cf. Weiland*, 938 F.3d at 919. And the state is not liable if the individual was in actual danger already, unless it has heightened that danger. *See Doe*, 782 F.3d at 917–18. In the "rare and often egregious" cases in which we have held liability attaches under the state-created danger exception, the plaintiff was "safe, or at least considerably safer, before" the state intervened. *Id.* at 917 (citation omitted).

Second, if the state does create or increase a danger, its action or failure to act must be both the actual and proximate cause of the harm. *Flint v. City of Belvidere*, 791 F.3d 764, 770 (7th Cir. 2015). Although our recent caselaw focuses on proximate cause, a plaintiff recovering damages for a constitutional tort must also show causation in fact. *Id.*; *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986); *Herzog v. Village of Winnetka*, 309 F.3d 1041, 1044 (7th Cir. 2002) (holding that "the ordinary rules of tort causation apply to constitutional tort suits").

Finally, the third element of "shocking the conscience" requires the conduct to be "egregious." *Est. of Her*, 939 F.3d at 876. The state actor's conduct must be "more culpable than mere negligence." *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007). "Neither bad decision-making nor grossly negligent behavior meets the stringent test." *Flint*, 791 F.3d at 770.

Wright invokes the state-created danger exception, claiming that this case presents that limited circumstance where state officials unjustifiably placed a person at increased risk from a third party. We conclude, however, like the district court, that the Department employees' alleged mishandling of the child-abuse investigation is insufficient to create liability under a substantive due process theory.

**B**

On the first prong, the district court found that Wright sufficiently alleged only one affirmative act that could qualify as the state creating a danger—Shumate's alleged falsification of the Safety Assessment. Meanwhile, Wright claims that multiple acts, including the home visit and interview, "turned a potential danger (increasingly-violent abuse) into an actual one, and increased the level of danger[.]" These facts, Wright asserts, are sufficient to support a "reasonable inference" that the "improperly-handled investigation" emboldened Thomas to retaliate and increase his violence toward J.W.

Rather than engage with these differing views of the facts as to whether a state actor created a substantial increase in danger to the plaintiff, we conclude that the best approach is to resolve the case on the second element of the exception, causation, and the third element, whether any act by the Department employees shocks the conscience.

**1**

Wright fails to allege any act by the defendants that satisfies the second element—causation. Actual cause requires that J.W.'s death would not have occurred but for the Department employees' conduct. *Flint*, 791 F.3d at 770. But actual causation cannot be implied here *post hoc* based solely on the

fact that the injury occurred after the defendants' conduct. *See id.* Miller's attempted interview, Shumate's interview, the closing of the investigation, or any other investigation deficiencies did not cause J.W.'s death.

Start with the home interview. In theory, a state actor could "cause" increased abuse by conducting an interview if they did so in a way that incited the abuser. *Cf. Lipman v. Budish*, 974 F.3d 726, 746–47 (6th Cir. 2020) (concluding that caseworkers placed the child at an increased risk of further abuse by repeatedly interviewing her about the abuse in the presence of her abusers). But here, the complaint alleges nothing of the sort. Pipes intervened and "quickly" stopped the questioning before Miller could talk to the children about the abuse. And neither Pipes nor Thomas were present at the school interview in November. Further, Wright does not allege that the defendants interviewed the children about abuse in the presence of Pipes or Thomas.

The home interview and the school interview occurred five and three months, respectively, before J.W.'s death. The timeline and the intervening events—including the allegedly improper investigation closure and informing Pipes and Thomas—are too attenuated to plausibly allege actual causation from the interviews. And Wright does not plead any facts suggesting that either interview actually increased the danger and caused harm to J.W.

The decision to close the case and inform Pipes and Thomas of the reported abuse also fails to plausibly allege actual causation. The defendants had no constitutional obligation to provide safety measures or supervise Pipes and Thomas. *DeShaney*, 489 U.S. at 195–97; *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005); *Wilson-Trattner v. Campbell*,

863 F.3d 589, 596 (7th Cir. 2017). An "ineffectual response" to abuse is not sufficient to support a claim under the state-created danger doctrine. *See Wilson-Trattner*, 863 F.3d at 594–95 (concluding that police officers' "dismissive and indifferent attitudes" to domestic violence calls did not support a Due Process claim).

Wright cites two cases for the proposition that the defendants caused J.W.'s death. In *Monfils v. Taylor* (7th Cir. 1998), this court concluded that the police created a danger when they released a recording of an anonymous tip—against the informant's wishes—to a person who later murdered the victim. 165 F.3d 511, 514–15, 518. And in *Paine v. Cason* (7th Cir. 2012), the court ruled that police created a danger when they "arrested [the victim] at Midway Airport, where she was safe," and released her "just before nightfall, in a dangerous neighborhood." 678 F.3d 500, 509–10. Wright argues that *Monfils* and *Paine* are "trap" cases in which "the police place[d] a person in a situation in which he is endangered by other private persons." *Slade v. Bd. of Sch. Dirs. of City of Milwaukee*, 702 F.3d 1027, 1030 (7th Cir. 2012).

The facts here differ from those in *Monfils* and *Paine*, and do not satisfy the causation element. Wright cannot point to a state action that placed J.W. in a worse position than before state intervention. In fact, the state actors did not "place" J.W. anywhere—they left him where he was. Sadly, the children were living with an abuser who subjected them to violence before the Department's involvement. Wright contends the causation element is satisfied because the defendants "did something." But a vague allegation of "doing something" by failing to intervene—even in light of an abusive home—is a

claim of negligence, not of state officials' actions that caused harm to J.W.

Even if Wright sufficiently pleaded an allegation to support actual causation, he cannot plausibly allege proximate causation. Proximate cause requires that J.W.'s death foreseeably resulted from the defendants' conduct. *Buchanan-Moore*, 570 F.3d at 829. It is a "fact specific inquiry." *Id.* Wright's main contention is that Miller's interview in Thomas and Pipes's presence caused the escalation of abuse. Yet, J.W.'s death occurred five months after Miller's interview. At best, Wright can rely on the investigation's closure and Shumate's informing Pipes and Thomas of the finding of abuse to show causation. But the two months between these acts and J.W.'s death is simply too attenuated in time to show foreseeability. *See, e.g.*, *Paine*, 678 F.3d at 506 (harm occurred within one day of danger-creating conduct); *Monfils*, 165 F.3d at 514–15 (same); *White v. Rochford*, 592 F.2d 381, 382 (7th Cir. 1979) (same); *Buchanan-Moore*, 570 F.3d at 826 (death occurred within days of perpetrator's release from jail). The threat posed by Thomas to J.W. was a "generalized risk of indefinite duration and degree, which is insufficient" to satisfy the proximate-cause requirement. *LaPorta*, 988 F.3d at 989 (citation modified).

**2**

Nor does the alleged conduct meet the third element's shocks-the-conscience standard. The law sets this as a high bar. "Only the most egregious official conduct will satisfy this stringent inquiry." *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011) (citation modified). Mere negligence or a bad decision is not enough. *Id.* at 654–55. In *Jackson*, the school did not remove an autistic student with "a long history of verbal and physical outbursts" from a classroom. *Id.* at

649. This led to him swinging a chair and injuring a special education teacher. *Id.* at 653. Affirming the grant of summary judgment for the school district, this court concluded that the facts did not support a finding of "deliberate indifference to the rights of the [teacher]." *Id.* at 655 (quoting *King*, 496 F.3d at 819). Although we are only at the motion to dismiss stage, the allegations do not present "a close question." *See id.*; *King*, 496 F.3d at 815, 819 (holding that the school district was not deliberately indifferent when a hall monitor denied a student reentry after school hours, causing her to leave school grounds and subsequently be abducted and sexually assaulted).

As Wright sees it, the defendants "knew or should have known" that Shumate's report "included false information and/or omitted information." But none of their actions violated state law. *See* 325 ILCS 5/7.12, 7.16. Shumate was required to inform Pipes and Thomas of the "indicated" finding of abuse. 325 ILCS 5/7.12. Their errors in reporting and investigating, while negligent, do not shock the conscience. *See King*, 496 F.3d at 819.

*       *       *

Wright has fallen short of alleging conduct that would trigger the state-created danger exception. The attempted home interview did not cause J.W.'s death. Likewise, the case closure and Shumate's notification of the "indicated" finding of abuse to Pipes and Thomas are too attenuated to support proximate causation. Similarly, J.W.'s death could not have been caused by any investigative or reporting deficiencies that occurred months before. Further, Illinois law compelled the defendants' actions. *See* 325 ILCS 5/7.12. The imperfect ex-

ecution of a policy or duty does not shock the conscience. *See King*, 496 F.3d at 819.[1]

**III**

Now to Wright's post-judgment motion to set aside the judgment and amend his complaint. Rule 59(e) relief is normally "reserved for extraordinary cases," and a movant must establish "(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Reilly v. Will Cnty. Sheriff's Off.*, 142 F.4th 924, 929 (7th Cir. 2025) (citations omitted). But when a Rule 59(e) motion is filed after the court dismisses a claim with prejudice, Rule 15(a)(2)'s "liberal" amendment standard replaces Rule 59(e)'s exceptional circumstances standard. *Id.* The denial of a Rule 59(e) motion is reviewed for abuse of discretion. *Kap Holdings, LLC*, 55 F.4th at 528.

Rule 15(a) provides courts the authority to allow plaintiffs to amend complaints "when justice so requires." FED. R. CIV. P. 15(a). Courts may deny leave if amendment would be futile. *Kap Holdings, LLC*, 55 F.4th at 529. When reviewing such a denial, "we apply the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim." *Id.* (citation modified). This "includes *de novo* review of the legal basis for the futility." *Id.* (citation omitted).

---

[1] The defendants have raised qualified immunity as an affirmative defense, and the parties have offered written and oral arguments on that topic. We need not reach that question because Wright has failed to state a claim under the state-created danger exception. *See Baer v. Neal*, 879 F.3d 769, 776 (7th Cir. 2018) (developed arguments need not be reached if they are not dispositive).

The district court did not abuse its discretion by denying Wright the opportunity to file a third amended complaint. The court had previously "explained what was wrong with the initial complaint and had already provided one opportunity to amend." *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 520 (7th Cir. 2024) (citation omitted). And as the court observed, Wright's proposed third amended complaint did not explain how it would cure the pleading deficiencies that resulted in dismissal of the second amended complaint. Allowing Wright to file another complaint in such circumstances is "pointless." *Lewis v. AbbVie Inc.*, 152 F.4th 807, 816 (7th Cir. 2025) (citation omitted).

Given Wright's repeated failures to state a substantive due process claim under § 1983, the district court did not abuse its discretion in denying the Rule 59(e) motion.[2]

*          *          *

A review of each of Wright's allegations shows that he failed to state a legally valid claim for relief. The district court also did not abuse its discretion in denying Wright's motion to amend the judgment or file another amended complaint.

AFFIRMED

---

[2] A district court "may decline to exercise supplemental jurisdiction" when it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The court dismissed Wright's federal claim. So, the court was well within its discretion to dismiss Wright's state-law claims. *See Coleman v. City of Peoria*, 925 F.3d 336, 352 (7th Cir. 2019).